SUMMIT PORCELAIN COMPANY, INCORPORATED, PROSECUTOR, v. BOARD OF ADJUSTMENT OF THE CITY OF SUMMIT ET AL., RESPONDENTS.

Decided July 14, 1925.

Zoning—Location of Factory Addition in Territory Zoned For Retail Trade—Admitted That the Objection Was Not Based on Necessity For Protection of Health, Safety or Morals, But Entirely on Ground of General Welfare—Claimed That a Residential Community May Limit Existing Manufacturers and Prohibit New Ones—Case Held to Come Under Ignaciunas v. Risley, 2 N. J. Adv. R. 852.

On *certiorari*.

For the prosecutor, *Osborne, Cornish & Scheck* and *Thomas Brunetto*.

For the respondents, *Clement K. Corbin*.

The opinion of the court was delivered by

CAMPBELL, J. This matter was argued before me, sitting as a single judge, under the statute, and it is a review of the

action of the board of adjustment of the city of Summit in refusing a building permit to prosecutor, a corporation engaged since 1920 in the manufacture of electric porcelain products in the city of Summit. Finding it necessary for the proper and economic conduct of its business to erect a one-story concrete building thirty-seven feet by thirty-two feet to contain a kiln, it applied for a permit to erect such building to the building inspector of the city of Summit, who declined to issue it on the ground that such construction would be in violation of the zoning ordinance of the city.

Prosecutor then appealed, pursuant to the terms of such ordinance, to the board of adjustment, and that board refused to issue such permit.

At the time this application was made and appeal prosecuted it was the intention to operate the kiln in such proposed building by heat generated by the burning of coal. Subsequently, such plan of heating was changed from coal to oil, and a new application, based upon such change, was made to the board of adjustment on March 20th, 1924, and that body refused the application on 'March 30, 1924, on the ground "that no good and sufficient reason exists to warrant granting an eighty per cent. increase in a forbidden non-conforming industry in a restricted zone in the very heart of the city."

The eighty per cent. increase referred to in such finding has reference entirely to the value and bulk of the product manufactured by prosecutor.

The plant of prosecutor is located in a business district of the city, but is termed a non-conforming industry because of the following provision of the zoning ordinance, viz.:

Section 14, subdivision b—"No building or premises shall be used in any part for any fabricating, manufacturing, converting, altering, finishing or assembling, where the major portion of the products manufactured or treated is to be sold other than at retail on the premises. No more than one-third of the total floor area of the building shall be occupied by such uses, except that the equivalent of the entire ground floor area may be thus occupied in any event."

·'Such provision applies to a zone created by such ordinance and within which prosecutor's plant is, and the proposed addition will be located.

Upon the argument before me it was frankly admitted by counsel for respondents that there was no contention that such refusal to issue the permit was based upon any consideration or necessity for the protection or promotion of health, safety or morals, but entirely upon the ground of general welfare, and it is argued that as the city of Summit is a residential community, the right exists, under the statutes authorizing ordinances of this character, to prohibit future industries and limit the growth and expansion of existing ones, except in certain prescribed areas, so as to protect the remaining territory of the municipality in its use for residential purposes; make such portions more desirable for such uses, insure owners against the encroachments from business and increase the value of properties in such residential areas. And it is urged that the term "general welfare of the community" in the statute (*Pamph. L.* 1924, *p.* 324) must be given this construction and meaning.

The case as presented, therefore, leaves nothing for consideration and determination, but the single question as to whether the general welfare provision in the statute has the meaning attempted to be attributed to it by the respondents.

The answer must be in the negative. That clause has been definitely defined by the Court of Errors and Appeals in *Ignaciunas* v. *Risley,* 2 *N. J. Adv. R.* 852; wherein it is said: "The ordinary use of property is not authorized by the general welfare clause of the statute to be prohibited, because repugnant to the sentiments or desires of a particular class residing in the immediate neighborhood thereof, but only because such use is detrimental to the interests of the public at large. In other words, the restriction authorized by this provision of the statute upon the untrammeled use of property for the promotion of the general welfare of the community must be such as will tend in some degree to prevent harm to the public generally, or to promote the common good of the whole people of such community." That is, the

general welfare of the community, through such ordinances, is to be promoted by provisions reasonably necessary to protect the health, safety and morals of the whole people constituting the particular community.

. View in this light, I cannot think the prohibitions of the ordinance in question, as applied to prosecutor's situation, can be said to be reasonable.

For that reason the decision of the board of adjustment has no legal support and justification, and must therefore be set aside, and the same is set aside, with costs.